UNITED STATES DISTRICT COURT

DISTRICT OF NEW HAMPSHIRE

Nancy Cindy Cassidy,
    Claimant

    v.                              Case No. 17-cv-451-SM
                                      Opinion No. 2018 DNH 040

Nancy A. Berryhill, Acting Commissioner,
Social Security Administration,
    Defendant

# O R D E R

Pursuant to 42 U.S.C. § 405(g), claimant, Nancy Cassidy, moves to reverse or vacate the Acting Commissioner's decision denying her application for Disability Insurance Benefits under Title II of the Social Security Act. See 42 U.S.C. § 423 (the "Act"). The Acting Commissioner objects and moves for an order affirming her decision.

For the reasons discussed below, claimant's motion is denied, and the Acting Commissioner's motion is granted.

## Factual Background

I.   Procedural History.

Claimant has unsuccessfully pursued Social Security benefits on two prior occasions. In July of 2010, she filed

applications for Disability Insurance Benefits ("DIB") and
Supplemental Security Income ("SSI") benefits, alleging an onset
of disability in March of 2010.  An ALJ denied those
applications by decision dated January 20, 2012.  A year later,
in April of 2013, claimant again filed for both DIB and SSI
benefits, alleging a disability onset date of March of 2012.  An
ALJ denied those applications by decision dated December 24,
2014.

In June of 2016, claimant, her attorney, and an impartial
Most recently, in March of 2015, claimant filed an
application for Disability Insurance Benefits, alleging that she
was disabled and had been unable to work since December 25, 2014
(the day following her last denial).  Claimant was 40 years old
at the time and had acquired sufficient quarters of coverage to
remain insured through June of 2017.  Claimant's application was
denied and she requested a hearing before an Administrative Law
Judge ("ALJ").

In June of 2016, claimant, her attorney, and an impartial
vocational expert appeared before an ALJ, who considered
claimant's application de novo.  Following the hearing, the ALJ
held the record open so claimant might submit additional
evidence in support of her application.  In July, claimant
provided those additional materials.  See Admin. Rec. at 30-87;

625-30.  The ALJ then issued his written decision, concluding

that claimant was not disabled, as that term is defined in the

Act, at any time prior to the date of his decision (October 12,

2016).  In response, claimant requested review by the Appeals

Council.  That request was denied.  Accordingly, the ALJ's

denial of claimant's application for benefits became the final

decision of the Commissioner, subject to judicial review.

Subsequently, claimant filed a timely action in this court,

asserting that the ALJ's decision is not supported by

substantial evidence.


    Claimant then filed a "Motion to Reverse Decision of

Commissioner" (document no. 7).  In response, the Acting

Commissioner filed a "Motion for an Order Affirming the Decision

of the Commissioner" (document no. 10).  Those motions are

pending.


II.  Stipulated Facts.

    Pursuant to this court's Local Rule 9.1, the parties have

submitted a joint statement of stipulated facts which, because

it is part of the court's record (document no. 9), need not be

recounted in this opinion.  Those facts relevant to the

disposition of this matter are discussed as appropriate.

## Standard of Review

I.    "Substantial Evidence" and Deferential Review.

Pursuant to 42 U.S.C. § 405(g), the court is empowered "to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing." Factual findings and credibility determinations made by the Commissioner are conclusive if supported by substantial evidence. See 42 U.S.C. § 405(g). See also Irlanda Ortiz v. Secretary of Health & Human Services, 955 F.2d 765, 769 (1st Cir. 1991). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Consolidated Edison Co. v. NLRB, 305 U.S. 197, 229 (1938). Importantly, it is something less than a preponderance of the evidence, so the possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's finding from being supported by substantial evidence. Consolo v. Federal Maritime Comm'n., 383 U.S. 607, 620 (1966). See also Richardson v. Perales, 402 U.S. 389, 401 (1971).


II.   The Parties' Respective Burdens.

An individual seeking DIB benefits is disabled under the Act if he or she is unable "to engage in any substantial gainful

activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). The Act places the initial burden on the claimant to establish the existence of a disabling impairment. See Bowen v. Yuckert, 482 U.S. 137, 146-47 (1987); Santiago v. Secretary of Health & Human Services, 944 F.2d 1, 5 (1st Cir. 1991). To satisfy that burden, the claimant must prove, by a preponderance of the evidence, that her impairment prevents her from performing her former type of work. See Manso-Pizarro v. Secretary of Health & Human Services, 76 F.3d 15, 17 (1st Cir. 1996); Gray v. Heckler, 760 F.2d 369, 371 (1st Cir. 1985). If the claimant demonstrates an inability to perform her previous work, the burden shifts to the Commissioner to show that there are other jobs in the national economy that she can perform, in light of her age, education, and prior work experience. See Vazquez v. Secretary of Health & Human Services, 683 F.2d 1, 2 (1st Cir. 1982). See also 20 C.F.R. § 404.1512 and 404.1560.

In assessing a disability claim, the Commissioner considers both objective and subjective factors, including: (1) objective medical facts; (2) the claimant's subjective claims of pain and disability, as supported by the testimony of the claimant or

other witnesses; and (3) the claimant's educational background, age, and work experience.  See, e.g., Avery v. Secretary of Health & Human Services, 797 F.2d 19, 23 (1st Cir. 1986); Goodermote v. Secretary of Health & Human Services, 690 F.2d 5, 6 (1st Cir. 1982).  Ultimately, a claimant is disabled only if her:

> physical or mental impairment or impairments are of such severity that [she] is not only unable to do [her] previous work but cannot, considering [her] age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which [she] lives, or whether a specific job vacancy exists for [her], or whether [she] would be hired if [she] applied for work.

42 U.S.C. § 423(d)(2)(A).


With those principles in mind, the court reviews claimant's motion to reverse and the Acting Commissioner's motion to affirm her decision.


**The ALJ's Findings**

In concluding that claimant was not disabled within the meaning of the Act, the ALJ properly employed the mandatory five-step sequential evaluation process described in 20 C.F.R. § 404.1520.  See generally Barnhart v. Thomas, 540 U.S. 20, 24

(2003).  Accordingly, he first determined that claimant had not
been engaged in substantial gainful employment since her alleged
onset of disability: December 25, 2014.  Admin. Rec. at 16.
Next, he concluded that claimant suffers from the following
severe impairment: psoriatic arthritis.  Id.  In addition to
that severe impairment, the ALJ also noted that claimant alleged
disability due to carpal tunnel syndrome, degenerative disc
disease, obesity, synovial cyst, and osteoarthritis of the
knees.  But, as to those alleged impairments, he concluded that
"there is little evidence that [they] result in more than
minimal, if any limitation in the claimant's ability to perform
work-related activities."  Id.  He then concluded that claimant
does not have an impairment, or combination of impairments, that
meets or medically equals one of the impairments listed in Part
404, Subpart P, Appendix 1.  Admin. Rec. at 19.

    Next, the ALJ determined that claimant retained the
residual functional capacity ("RFC") to perform the exertional
demands of the full range of light work.  Id.  In light of that
finding, the ALJ found that claimant is capable of performing
her past relevant work as a cashier, fast food worker, lead
cashier, and customer complaint clerk.  Id. at 23.  See also Id.
at 132-33 (vocational expert's testimony about claimant's work
history).  Accordingly, the ALJ concluded that claimant has not

been under a disability, as defined in the Act, through the date of his decision.

Claimant challenges the ALJ's decision on four grounds, asserting that he erred by: (1) failing to obtain a medical expert to opine on the "functional impact of the claimant's lumbar spinal impairment and recurrent synovial cysts," Claimant's memorandum at 5; (2) failing to properly consider the functional impact of claimant's abdominal surgeries; (3) affording too much weight to the opinion of Dr. Marcia Lipski (a non-examining state agency physician); and (4) improperly affording "partial weight" to the opinion issued by an ALJ in claimant's second (of three) applications for Social Security benefits. None of those challenges to the ALJ's decision has merit.

## Relevant Facts

Before turning to the merits of claimant's assertions, it is, perhaps, appropriate to recite a brief summary of the medical evidence of record.

A.  Medical Opinions.

In April of 2015, Dr. Jan Jacobsen conducted a psychological review of claimant and concluded she had no severe mental impairments.  Admin. Rec. at 192-93.

In June of 2015, Dr. Marcia Lipski reviewed claimant's medical records and concluded she could perform the full range of light work.  Id. at 194-95.

In July of 2015, Cindy Student conducted a functional capacity assessment of claimant and opined that claimant put forth "variable levels of physical effort," demonstrated "inconsistency with regard to her pain and disability reports," exhibited a heart rate consistent with low effort, and walked with an "antalgic gait which fluctuated in severity" during the testing day.  Id. at 586-87.  She also noted that although claimant "demonstrates a high perception of disability," such a disability "was not consistent with observed function and behaviors throughout testing."  Id. at 587.  Ms. Student did not expressly accuse claimant of overstating her symptoms, or intentionally giving less than full effort, or malingering, but that is a plausible inference that could be drawn from her report.

And, finally, on August 15, 2015, Dr. Lisa Doyle
(claimant's treating physician), completed a "Physician/
Clinician Statement of Capabilities" in which she opined that
claimant was capable of performing the physical tasks associated
with light work, with some postural limitations.  Id. at 611.
Nevertheless, she checked a box on that form indicating that
claimant is not "capable of participating in work-related
activities at this time."  Id. at 612.

B.    Surgical Treatments.

In mid-January 2016, claimant visited Elliot Hospital for a
steroid joint injection for back pain, and staff also attempted
to burst a facet cyst.  Admin. Rec. at 580–81.  She reported no
immediate relief, and staff concluded they would try to burst
the cyst again in two weeks.  A later, undated, MRI report
indicated a cyst remained near claimant's spine which narrowed
the left lateral recess along with mild to moderate narrowing of
the central canal and moderate bilateral facet arthrosis at the
L4-L5 level.  Id. at 613.

In May 2016, claimant visited neurologist Dr. Paul Wang at
New Hampshire NeuroSpine Institute, reporting worsening low back
pain extending into her left leg, with occasional numbness and
tingling.  Id. at 614.  Dr. Wang assessed a synovial cyst in

claimant's lumbar spine, and spondylolisthesis of lumbosacral region. He recommended surgery (a laminectomy procedure), as well as synovial cyst removal. Id. at 616–17.

On June 9, 2016, claimant and her attorney appeared for the hearing before the ALJ.

On June 29, 2016, claimant visited a physician's assistant at New Hampshire NeuroSpine Institute for a preoperative counseling visit prior to her upcoming surgery. The physician's assistant noted, "The patient understands this is being done electively and is by no means emergent." Id. at 628. On July 8, 2016, the date the lumbar spinal surgery had been scheduled to be performed, claimant instead underwent a sigmoid colectomy and colostomy after CT scan images showed she had a perforated sigmoid colon. Id. at 31-45.

On October 12, 2016, the ALJ issued his decision. Three months later, on January 22 of 2017, claimant underwent additional surgery (a cholecystectomy), because she had persistent biliary colic symptoms. And, a week later, claimant underwent a small bowel resection to remove an obstruction caused by a sponge inadvertently left after the sigmoid colectomy performed on July 8, 2016.

**Discussion**

A.  Claimant's Back Pain and Synovial Cyst.

Claimant alleges that the ALJ erred by failing to call upon
a medical expert to assess the functional limitations imposed by
her back pain and synovial cyst.  With regard to claimant's
alleged back pain, the ALJ concluded that it was not severe,
observing that "Although claimant has consistently complained of
low back pain, in 2016, a magnetic resonance imaging ("MRI") of
the lumbar spine showed mild findings.  Additionally, the record
reveals that the claimant has exhibited normal musculoskeletal
range of movements."  Admin. Rec. at 17.  That finding is amply
supported by the evidence of record.  See, e.g., Id. at 463
(noting that claimant experienced significant improvement of
discomfort on medications, had a normal MRI, and was "non-
compliant with labs and follow up"); 192-93 (Dr. Marcia Lipski
concluded that claimant could perform the full range of light
work); 586-98 (functional capacity test suggesting that while
claimant "demonstrates a high perception of disability," she put
forth "variable levels of effort" during testing and is capable
of performing far more physical activity than she states).  See
also Id. at 176-77 (noting that in an August 2013, in connection
with an earlier application for Social Security benefits,
claimant underwent a functional capacity test during which she
exhibited 4 of 5 positive Waddell signs – an indication that the

source of her alleged pain might be "non-organic" or
psychological and which the ALJ interpreted as a sign of
potential malingering).

As for claimant's synovial cyst, the ALJ noted that she had
been successfully treated in early 2016.  And, while he
acknowledged that the cyst had returned (and that claimant was
scheduled for surgery to address it), he noted that there "are
no medical opinions or evidence of record that would support a
finding that this particular impairment will last the required
12 months."  Admin. Rec. at 17.  Again, that conclusion is fully
supported by the record.

But, says claimant, the alleged limitations imposed upon
her by the cyst (and its eventual surgical removal), when
combined with the fact that she had a sigmoid colectomy on July
8, 2016 (after the hearing, but before the ALJ's decision),
would render her "disabled" for more than the requisite one-year
period.  Specifically, claimant asserts that "If things had gone
as planned, the sequential recovery periods from the three
surgeries – the initial colectomy and subsequent reversal of the
colostomy and lumbar spinal surgeries – would have lasted longer
than 12 months."  Claimant's memorandum at 7.  That is, however,
entirely speculative.  There is no record support for that

claim.  Indeed, claimant's discharge notes following the initial

colectomy surgery suggest her recovery time would be minimal.

See Admin. Rec. at 34, Discharge Summary Report ("The patient

was advised that she may resume regular activity but she should

not lift greater than 10 pounds for 4-6 weeks after surgery.").

There was no need to obtain a medical expert's opinion about the

functional impact of claimant's cyst removal and colectomy

because the record evidence supported the conclusion that those

surgeries, whether viewed alone in combination, would impose on

claimant only transitory limitations that would not impact

claimant for the requisite one-year period.


B.    Claimant's Abdominal Surgeries.

      Claimant also asserts that the ALJ erred by failing to

properly admit into the record the medical records concerning

her colon surgery in July of 2016.  Assuming the ALJ did, in

fact, err as claimant says, claimant has not shown any prejudice

from that error.  In short, those records (which are before the

court) provide no support for claimant's assertion that her

colon impairment would cause work limitations for a continuous

period of at least 12 months.  And, as the Acting Commissioner

correctly notes, claimant bears the burden of showing that the

alleged error resulted in some prejudice to her.  See, e.g.,

Shinseki v. Sanders, 556 U.S. 396, 409 (2009) ("[T]he burden of

showing that an error is harmful normally falls upon the party attacking the agency's determination"); <u>Ward v. Comm'r of Social Security</u>, 211 F.3d 652, 656 (1st Cir. 2000) ("While an error of law by the ALJ may necessitate a remand, a remand is not essential if it will amount to no more than an empty exercise.") (citations omitted).

Claimant next faults the Acting Commissioner for not taking into account evidence she submitted to the Appeals Council after the ALJ's decision in October of 2016. Specifically, she says:

> Subsequent medical developments showed that the medical evidence regarding the initial abdominal surgery, when considered with other medical evidence, would likely affect the outcome of the case. As mentioned above, on January 28, 2017, seven months after the initial abdominal surgery, the Plaintiff had to undergo a small bowel resection to remove a blockage caused by a laparotomy sponge left behind after the initial surgery. These records confirm that the surgeon who performed the original Hartmann operation in July of 2016, Richard Murphy, M.D., had planned to perform colostomy reversal surgery in March. Although these records and the cover letter were submitted to the Appeals Council two weeks before it issued its decision on September 1, 2017, the Appeals Court failed to enter the records or cover letter into the administrative record.

Claimant's memorandum at 10. Claimant's assertion - at least as the court understands it - raises two issues: whether such evidence impacts the ALJ's decision, and whether such evidence impacts the Appeals Council's decision not to decline review.

First, that evidence was not part of the record before the ALJ and, therefore, cannot form the basis of this court's "substantial evidence" review of the ALJ's decision. As this court has previously noted, the "The ALJ's determination is reviewed based on the evidence of record at the time of his decision, so this court cannot consider additional evidence submitted only to the Appeals Council." Costa v. Astrue, 2010 WL 4365868, at *1 (D.N.H. Nov. 3, 2010).

Second, to the extent claimant challenges the Appeals Council's denial of her request to review (it is not clear that she does), claimant had not shown that the Appeals Council's discretionary decision rested on "an explicit mistake of law or other egregious error." Mills v. Apfel, 244 F.3d 1, 5 (1st Cir. 2001). Moreover, claimant has pointed to no evidence suggesting that such information could have had an impact on her application for benefits because, again, nothing in those medical records suggests that claimant's surgeries would result in an impairment that would "be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). Although claimant has introduced evidence of those surgeries, she has not introduced any evidence (e.g., opinions from the surgeons or other treating sources) about the impact those surgeries had upon her ability to perform work-

related activities, or the expected duration (if any) of any
resulting disability.

C.    Weight Afforded to Opinions of Dr. Marcia Lipski.

As noted above, Dr. Lipski (the non-examining state agency
physician) reviewed claimant's medical records and opined that
she could perform the full range of light work.  Admin. Rec. at
194-195.  That opinion was supported, at least in part, by the
opinion of Dr. Lisa Doyle (claimant's treating physician), who
stated that claimant was capable of performing the physical
requirements of light work, with some postural limitations.  Id.
at 611.  The ALJ afforded Dr. Lipski's opinion "great weight,"
noting:

> Although [Dr. Lipski] did not have an opportunity to
> examine the claimant, her findings are consistent with
> the medical evidence provided.  Diagnostic imaging
> shows that the claimant's condition is not
> significantly limiting and there is no indication that
> her condition has significantly worsened.  Although
> the record shows that the claimant is scheduled for
> surgery, there is no indication that the surgery will
> worsen her condition.  Currently, the claimant has
> continued to receive only conservative care.

Admin. Rec. at 22.

Claimant faults the ALJ for assigning Dr. Lipski's opinion
great weight because Dr. Lipski did not have the benefit of
subsequent MRI testing (revealing claimant's synovial cyst) or

medical records regarding her treatments for that cyst as well as her subsequent abdominal surgery. But, as the court has noted previously, nothing in the record suggests that claimant's various surgical treatments resulted in anything other than modest recovery times, after which her symptoms were (presumably) resolved or, at a minimum, ameliorated. Importantly, claimant points to nothing in the record which even suggests that any impairment resulting from those surgeries would have met the requisite one-year period necessary to constitute a disability.

D.    ALJ's Misuse of Prior Benefits Denial.

    As noted above, claimant unsuccessfully sought Social Security benefits on two earlier occasions. And, the ALJ gave "partial weight" to the immediately-prior ALJ decision denying claimant's applications, noting that claimant's current alleged disability began one day after the most recent decision denying her benefits was issued. Specifically, he wrote:

> In the present case, little weight is given to the
> prior decision [denying claimant's application for
> benefits] dated January 20, 2012 because I find that
> it is too remote. However, partial weight is given to
> the prior Administrative Law Judge decision dated
> December 24, 2014 because it is highly probative of
> the claimant's residual functional capacity for the
> period that began only one day after the previously
> adjudicated period. Because there is an absence of
> evidence to the contrary, the claimant's condition

> very likely remained unchanged within this discrete
> period.  Although the probative value of a prior
> finding relating to a claimant's medical condition
> will likely diminish as the timeframe expands, it
> remains strong in a case such as this where the
> relevant period begins one day immediately after the
> date of the prior adjudication.

Admin. Rec. at 14 (emphasis supplied).  That was an error.


As claimant correctly notes, an ALJ (at least outside of
the Fourth Circuit) is not permitted to rely upon findings from
a previous denial of benefits.  Instead, the ALJ must consider
"the facts and issues de novo in determining disability with
respect to the unadjudicated period."  Social Security
Acquiescence Ruling AR 00-1(4), Effect of Prior Disability
Findings on Adjudication of a Subsequent Disability Claim, 2000
WL 43774 at *3 (Jan. 12, 2000).  In other words, an ALJ may "not
consider prior findings made in the final determination or
decision on the prior claim as evidence in determining
disability with respect to the unadjudicated period involved in
the subsequent claim."  Id.


Again, however, claimant has failed to demonstrate that any
harm flowed from the ALJ's error.  Had this been a closer case,
perhaps that error might be said to have had some meaningful
impact on the ALJ's final determination.  But, this is not a

particularly close case.  Independent of the evidence upon which

the ALJ erroneously relied, the record amply supports the ALJ's

various decisions and it is plain that the minor error

identified by claimant was harmless.  There is, then, no basis

to remand this matter for additional proceedings.  See, e.g.,

Ward, 211 F.3d at 656.


### Conclusion

Judicial review of the ALJ's decision is both limited and

deferential.  This court is not empowered to consider claimant's

application de novo, nor may it undertake an independent

assessment of whether he is disabled under the Act.

Consequently, the issue before the court is not whether it

believes claimant is disabled.  Rather, the permissible inquiry

is "limited to determining whether the ALJ deployed the proper

legal standards and found facts upon the proper quantum of

evidence."  Nguyen v. Chater, 172 F.3d 31, 35 (1st Cir. 1999).

Provided the ALJ's findings are properly supported by

substantial evidence - as they are in this case - the court must

sustain those findings even when there may also be substantial

evidence supporting the contrary position.  Such is the nature

of judicial review of disability benefit determinations.  See,

e.g., Tsarelka v. Secretary of Health & Human Services, 842 F.2d

529, 535 (1st Cir. 1988) ("[W]e must uphold the [Commissioner's]

conclusion, even if the record arguably could justify a different conclusion, so long as it is supported by substantial evidence."); Rodriguez v. Secretary of Health & Human Services, 647 F.2d 218, 222 (1st Cir. 1981) ("We must uphold the [Commissioner's] findings in this case if a reasonable mind, reviewing the evidence in the record as a whole, could accept it as adequate to support his conclusion.").

Having carefully reviewed the administrative record and the arguments advanced by both the Acting Commissioner and the claimant, the court concludes that there is substantial evidence in the record to support the ALJ's determination that claimant was not "disabled," as that term is used in the Act, at any time prior to the date of the ALJ's decision (October 12, 2016). The ALJ's decision to afford Dr. Lipski's opinions "great weight," his assessment of claimant's various surgeries, and his (implicit) decision not to solicit additional expert medical testimony about claimant's residual functional capacity are all supported by substantial record evidence. And, as noted, while the ALJ did err in giving any weight to the findings made by another ALJ in the context of one of claimant's prior applications, that error was harmless (at least claimant has not shown it to be otherwise).

For the foregoing reasons, as well as those set forth in the Acting Commissioner's legal memorandum, claimant's motion to reverse the decision of the Commissioner (document no. 7) is denied, and the Acting Commissioner's motion to affirm her decision (document no. 10) is granted. The Clerk of the Court shall enter judgment in accordance with this order and close the case.

**SO ORDERED.**

_____
Steven J. McAuliffe
United States District Judge

March 5, 2018

cc:   Peter K. Marsh, Esq.
      Robert J. Rabuck, Esq.
      Terry L. Ollila, AUSA